UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN REA WEST,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>        Defendant. | No. 2:16-cv-2882-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's motion is granted.

I. <u>BACKGROUND</u>

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had been disabled since July 7, 2012. Administrative Record ("AR") 202-18. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 130-34, 136-41. On March 16, 2015, a hearing was held before administrative law judge ("ALJ") David G. Buell. *Id.* at 31-79. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert testified. *Id.*

1

On May 6, 2015, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id*. at 14-26. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since July 7, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairment: degenerative disc disease of the thoracic, lumbar and cervical spines, asthma and obesity (20 CFR 404.1520(c) and 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the individual may occasionally crouch and crawl, but should not climb ladders, ropes or scaffolds. The individual may frequently reach overhead and frequently perform handling and fingering with the right, dominant upper extremity. The individual should avoid exposure to hazards, defined as work at unprotected heights or near dangerous unguarded moving machinery. The individual should avoid concentrated dust, fumes and airborne irritants.

* * *

6. The claimant is capable of performing past relevant work as a psychiatric technician. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

* * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 7, 2012, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 16-26.

Plaintiff's request for Appeals Council review was denied on October 14, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). ECF No. 13 at 15-22.

III. <u>ANALYSIS</u>

Plaintiff claims that the ALJ erred in (1) weighing the medical opinion evidence and (2) finding that plaintiff was not credible without identifying clear and convincing reasons. ECF No. 17 at 6-11.

A. <u>The ALJ Did Not Err In Weighing the Medical Opinion Evidence</u>

Plaintiff argues that the ALJ erred in weighing the medical opinion evidence concerning her right arm and hand impairment and rejecting her treating physician's opinion without legally sufficient reasons. ECF No. 17 at 6-10

1. <u>Relevant Legal Standards</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are

supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

### 2. Background

Plaintiff's treating physician, Dr. Brar, completed a medical assessment of plaintiff's functional limitations. AR 440-41. Dr. Brar reported that he treated plaintiff for back pain and osteoarthritis between March 2010 and September 2013. *Id*. at 440. He opined that plaintiff could lift 5 pounds frequently and 8 pounds occasionally; stand for a total of 4 hours in an eight-hour workday, but only 30 minutes without interruption; and sit for a total of two hours in an eight-hour workday, but only for 30 minutes without interruption. *Id*. at 440-41. He further opined that plaintiff could never bend, climb, balance, stoop, crouch, crawl, or kneel; and could frequently reach, handle, feel, push, and pull with both upper extremities. *Id*. at 441. It was also Dr. Brar's opinion that plaintiff would be expected to miss 4 or more workdays a month and would need to lie down for 1-2 hours in an 8-hour workday. *Id*.

In September 2013, plaintiff underwent a consultative examination, which was performed by examining physician Dr. Caspian Oliai. *Id*. at 431-37. Based on the examination, Dr. Oliai diagnosed plaintiff with right carpal tunnel syndrome versus cervical radiculopathy and musculoligamentous strain in the lumbar region causing back spasms in the paraspinal muscles. *Id*. at 436. Dr. Oliai opined that plaintiff should be able to sit 6 hours during an 8-hour workday; stand and walk frequently during an 8-hour workday; occasionally bend, stoop, squat, and crouch; carry 30 pounds occasionally and 20 pounds frequently; and lift from the ground 20 pounds occasionally and 10 pounds frequently. *Id*. He further opined that plaintiff should not be expected to reach overhead with her right upper extremity, and that grasping, handling, and/or

feeling with the right hand should be restricted to 10 pounds for no more than 2 hours a day. *Id*. at 436-37. He also noted that when plaintiff was not experiencing back spasms, her ability to function is slightly below average, but when spasms occur she should not be expected to perform work-activities of moderate to heavy work. *Id*. at 436.

The record also contains opinions from two non-examining physicians, Dr. Jaituni and Dr. David. Dr. Jaituni opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently balance, kneel, and crouch; occasionally stoop, crawl and climb ramps, stairs, ladders, ropes, and scaffolds; frequently finger with both hands, but could not reach overhead with her right upper extremity. *Id*. at 86-86.

Dr. David opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently kneel and climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally crouch and crawl; balance without limitation; frequently engage in "light overhead" reaching, handling, and fingering with the right upper extremity, but was limited to handling no more than 10 pounds with both hands. *Id*. at 110-12. Dr. David further opined that plaintiff should avoid concentrated exposure to fumes, odors, dusts, and gases, as well as hazards such as machinery and heights. *Id*. at 112.

          3.    <u>Discussion</u>

                  a.    <u>The ALJ Did Not Err in Assessing Plaintiff's Arm and Hand Impairment</u>

The ALJ determined that plaintiff had the residual functional capacity to frequently reach overhead and frequently perform handling and fingering with her right extremity. AR 19. Plaintiff argues that the ALJ's decision fails to provide any basis or explanation for these limitations, which were "considerably less limiting than those of any" medical opinion. ECF No. 17 at 8. Plaintiff also contends that the ALJ erred in assessing her right arm impairments by finding at step-two that there was no medically determinable impairment limiting her ability to reach and handle. *Id*.

Turning first to plaintiff's step-two argument, the record contains evidence of carpal tunnel syndrome, including a diagnosis and positive Tinel's sign. *See, e.g.,* 409, 435-46. Despite such evidence, the ALJ concluded that plaintiff's alleged carpal tunnel syndrome was not a medically determinable impairment because there "was no formal objective testing to assess the condition to make the diagnosis." AR 17. The court need not address the propriety of that finding as the ALJ not only considered plaintiff's arm and hand impairment in assessing plaintiff's residual functional capacity ("RFC"), but ultimately determined that plaintiff had limitations in reaching, handling, and fingering. *Id.*, *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless an ALJ's failure to list certain impairment at step two where the ALJ fully evaluated the impairment at step four); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Smolen*, 80 F.3d at 1290 (if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523). Accordingly, any error at step-two was harmless.

Plaintiff also failed to demonstrate that the ALJ committed reversible error in assessing her limitations in reaching, handling, and fingering. Contrary to plaintiff's contention, the ALJ adequately explained the basis for the limitations assessed in reaching and manipulation. First, the ALJ gave great weight to Dr. Brar's treating opinion that plaintiff could frequently perform reaching and handling, noting that the opinion was consistent with plaintiff's reported activities. AR 22, 441.

Plaintiff, however, appears to suggest that the ALJ's reliance on Dr. Brar's opinion was improper. ECF No. 17 at 7. Plaintiff notes that Dr. Brar's opinion is contained on a check-the-box form, which requested Dr. Brar specify whether plaintiff could "frequently," "occasionally," or "never" reach, handle, feel, or push/pull. AR 441. Plaintiff contends that since "frequent" was the most expansive option, Dr. Brar "wasn't thinking of any limitation along these lines at all." ECF No. 17 at 7. The form's designation of "frequent" as the most expansive option only stands to benefit plaintiff. It essentially requires a physician to designate frequent even where he believes the patient has no functional limitations. Accordingly, it is possible that Dr. Brar believed that plaintiff had no restrictions in using his upper extremities despite checking the

7

"frequent" box. But the scenario would not support a more limiting RFC than assessed by the ALJ..

Additionally, the ALJ gave great weight to Dr. David's opinion that plaintiff could frequently perform overhead reaching[2], as well as Dr. Jaituni's opinion that plaintiff could frequently finger. AR 24-24. These opinions were generally consistent with the opinion of Dr. Brar, who found that plaintiff could perform frequent reaching and manipulation. 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that opinion."); 20 C.F.R. § 416.927(c)(4) (same). Although plaintiff is critical of the ALJ's acceptance of part, but not all, of these non-examining physicians' opinions, "[i]t is not necessary [for an ALJ] to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).

b. The ALJ Properly Rejected Dr. Brar's Opinion

Although the ALJ gave great weight to Dr. Brar's opinion that plaintiff could frequently reach and perform manipulative activities, the ALJ gave little weight to the balance of Dr. Brar's opinions. AR 22. The ALJ found that Dr. Brar's opinions were extreme and inconsistent with (1) the minimal objective findings, (2) Dr. Brar's own treatment notes, (3) plaintiff's conservative treatment, and (4) plaintiff's reported activities. AR 22. The ALJ also observed that Dr. Brar had a limited treating relationship with plaintiff at the time the opinion was rendered and that plaintiff had no objective findings for over a month at the time of opinion. *Id*.

The ALJ's first two reasons fail to justify the rejection of Dr. Brar's opinion. The ALJ provided no explanation for his conclusion that Dr. Brar's opinion was inconsistent with the

---

[2] Plaintiff notes that Dr. David opined that plaintiff could perform frequent *light* overhead reaching. ECF No. 17 at 8; *see* AR 111 ("Freq light overhead"). It is far from clear what Dr. David intended by the "light" qualifier. Resolution of that ambiguity fell squarely in the province of the ALJ, who reasonably determined that Dr. David's opinion, in conjunction with Dr. Brar's opinion, established that plaintiff could frequently reach overhead with his right arm. *See Edlund*, 243 F.3d at 1156 (ALJ is responsible for resolving ambiguities); *Thomas*, 278 F.3d at 954 (the court may not disrupt the ALJ's reasonable interpretation of evidence).

8

objective findings in the record as well as the doctor's own treatment notes. The ALJ's conclusory findings, without any explanation, fall far short of satisfying the specific and legitimate standard. An ALJ may satisfy his burden of providing specific and legitimate reasons for rejecting a contradicted medical opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988). As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

*Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999).

Here, the ALJ offers only his conclusion that Dr. Brar's opinion is inconsistent with the medical record and the physician's own treatment notes, without identifying a particular inconsistency. AR 22. The ALJ's failure to identify any inconsistencies is particularly troubling given that Dr. Brar's examinations of plaintiff's lower back consistently revealed tenderness and spasm of the paraspinal muscle, and it was often noted that plaintiff had restrictive movement due to pain. *See id*. at 329, 366, 372, 377, 381, 455. Accordingly, the ALJ's first two reasons do not support the rejection of Dr. Brar's opinion.

However, the ALJ provided additional reasons which constitute specific and legitimate reasons for rejecting Dr. Brar's opinion. The ALJ found that Dr. Brar's opinion was entitled to little weight because he treated plaintiff conservatively, including prescribing nonsteroidal anti-inflammatory drugs ("NSAIDs"). AR 22. An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The record reflects that plaintiff's treatment was generally conservative. Dr. Brar recommended plaintiff use ice packs and heating pads, perform stretches, adjustment her diet, exercise, attend physical therapy, and enroll in a walking program. *See, e.g., id.* at 362, 364, 380, 383. As for medication, plaintiff was generally

9

prescribed anti-inflammatories, Soma, and Valium. *See, e.g., id*. at 372, 380, 382. Although there plaintiff was prescribed narcotic pain medication, such prescriptions were infrequent. *See id*. at 377, 519, 453. These records demonstrate that despite plaintiff's allegations of debilitating symptoms and pain, her impairments were generally treated conservatively by her primary care physician. *See also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (finding over-the-counter medication to be conservative treatment); *Jones v. Comm'r of Soc. Sec.*, 2014 WL 228590, at *7-10 (E.D. Cal. Jan. 21, 2014) (affirming ALJ's finding that plaintiff received conservative treatment, which included physical therapy, anti-inflammatory and narcotic medications, trial epidural steroid injections, and massage therapy); *Higinio v. Colvin*, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (finding plaintiff's overall treatment was conservative where plaintiff had been prescribed narcotic medication at various times, but was also treated with a back brace and heating pad); *Cf. Davis v. Colvin*, 2015 WL 5255353, at *11 (E.D. Cal. Sept. 9, 2015) (findings conservative treatment where plaintiff had not been referred to a pain specialist or received specialized treatment for pain).

The ALJ also found that Dr. Brar's opinion was inconsistent with plaintiff's activities of daily living. AR 22. As noted above, Dr. Brar opined that plaintiff could lift no more than 8 pounds, stand/walk and sit for only 30 minutes at one time, and never perform postural activities. *Id*. at 440-41. Plaintiff, however, testified that she spends a substantial amount of time at her family's ranch, where she spends "most of the day . . . walking around the property [and] reading." *Id*. at 56. She also rides a horse twice a month for about an hour (*id*. at 59-60), and reported that her hobbies include gardening (*id*. at 433). Plaintiff's ability to sit on a horse for about an hour and spend a significant portion of the day walking around her parents' ranch is inconsistent with Dr. Brar's opinion that she can only stand/walk and sit for 30 minutes at one time. Further, her ability to ride a horse and garden is inconsistent with the treating doctor's opinion that she can never perform any postural activities.

Plaintiff argues that the ALJ's reliance on her activities is misplaced, as she does not perform activities that are inconsistent with disability. ECF No. 17 at 10. Plaintiff contends that the horse she rode was a 20-year old gated horse that didn't trot, and that her other activities do

10

not demonstrate an ability to work. *Id*. at 7 n.2. Even if true, an ALJ may still reject an opinion that is inconsistent with plaintiff's daily activities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir.1999) (an ALJ may reject a treating opinion that is inconsistent with other evidence in the record, including plaintiff's reported daily activities).

Lastly, the ALJ found that Dr. Brar had only been treating plaintiff for three months at the time he rendered his opinion, and that plaintiff had no objective findings the prior month. AR 22. While the limited treating relationship may not alone constitute a sufficient basis for rejecting a treating opinion, it is a proper consideration. 20 C.F.R. § 404.1527(c)(2)(i); 20 C.F.R. § 416.927(c)(2)(i); *see Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). In this case, however, the evidence reflects a significantly longer treating relationship than observed by the ALJ. Dr. Brar completed his medical assessment on February 19, 2014. *Id*. at 440. Medical records show, however, that Dr. Brar treated plaintiff as early as February 2012 (*id*. at 327-28), and Dr. Brar reporting that he began treating plaintiff in March 2010 (*id*. at 440).[3] This evidence clearly shows a treating relationship spanning more than 3 months.

Notwithstanding this error, because the ALJ's provided two specific and legitimate reasons for rejecting Dr. Brar's opinion, the court finds that any reliance on the other reasons was harmless. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (a court may affirm an ALJ's decision "under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

B. The ALJ Provided Legally Sufficient Reasons for Rejecting Plaintiff's Testimony

Plaintiff also claims that the ALJ erred by rejecting her testimony absent clear and convincing reasons. ECF No. 17 at 10.

1. Relevant Legal Standards

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may

---

[3] The administrative record does not contain medical records dating back to 2010.

then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. *See id.* at 345-347. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

    2.  Background

  Plaintiff testified that she has pain in her back, which she described as a burning and pinching feeling. AR 45. She also experiencing back spasms a couple times a week, which can last for a couple hours or several days, *id*. at 46, and has difficulty with pain radiating down her left leg, *id*. at 47. She reported experiencing neck pain a couple times a day that radiates down to her right shoulder and arm and causing numbness in her hand. *Id*. at 48. She testified that she also has tennis elbow, which also causes pain. *Id*. at 57. She further stated she has difficulty bending and twisting-which can trigger spasms—as well as reaching overhead with both extremities. *Id*. at 50-51. To alleviate her pain, she lies down a couple times a day or reclines in a chair. *Id*. at 52. She also testified that she can stand for about 15 minutes and sit for 10-20 minutes before she starts feeling discomfort. *Id*. at 53-54. Plaintiff also reported difficulty using

/////

her hands, stating that she has difficulty grasping objects and using her fingers for typing. *Id*. at 49, 65.

### 3. Discussion

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms were not entirely credible. AR. 20. In reaching this finding, the ALJ found that plaintiff engaged in a number of daily activities that were inconsistent with allegations of total disability, noting that plaintiff rides a horse, walks around her parents' ranch, drives 22 miles to her parents' ranch, shops, cooks, watches movies, and gardens. *Id*. The ALJ also found that plaintiff's allegations of severe limitations was not credible in light of her conservative treatment. *Id*.

An ALJ may consider inconsistencies between a claimant's activities and his subjective complaints. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas*, 278 F.3d 947, 959 (9th Cir.2002). Additionally, an ALJ may rely on evidence of conservative treatment to discount a plaintiff's allegations of severe impairments. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of "conservative treatment" is "sufficient to discount a claimant's testimony regarding severity of an impairment.").

Plaintiff's allegations regarding her impairments are largely consistent with Dr. Brar's medical opinion. She claims to have significant postural limitations, difficulty standing and sitting for prolonged periods of time, and difficulty using her arms and hands. Again, plaintiff's ability to ride a horse, walk around her parents' ranch, and garden is inconsistent with the described limitations. As already discussed, the medical records reflects plaintiff's symptoms of been addressed with conservative treatment.

Accordingly, the ALJ provided clear and convincing reasons for finding that plaintiff was not entirely credible.

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

13

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: March 31, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE